## BRIZZOLARI v. THE STATE.

1. VAGRANCY: *Jurisdiction of municipal courts.*
   The Constitution of 1874 (Sec. 28, Art. VII.) did not abrogate the jurisdiction of municipal courts to try and punish vagrancy. The jurisdiction conferred by that section upon county courts, as to vagrants, extends only to such matters of police regulation as are designed to prevent them from becoming burdensome to the county.

ERROR to *Sebastian* Circuit Court, Fort Smith District.
Hon. J. H. ROGERS, Circuit Judge.

### STATEMENT.

At the November term, 1879, of the Circuit Court at Fort

Smith, James Brizzolari, John Kemp and Bynum Colbert were indicted for false imprisonment of Thomas Lacey.

Upon the trial before a jury, upon the plea of not guilty, the State proved that on the sixth of May, 1879, Colbert filed before Brizzolari, who was mayor of the city of Fort Smith, an affidavit that Lacey was a vagrant within the city limits, in violation of an ordinance of the city; that there-upon Brizzolari, as mayor, issued a warrant for his arrest, and delivered it to Kemp, the marshal of the city, to be executed, and Kemp executed it, by arresting Lacey and. carrying him before Brizzolari, the mayor, for trial. The mayor, against the demand of Lacey for an immediate trial, set the case for the thirteenth of May, and required Lacey to give bond and security for his appearance, in the sum of $1000. Lacey immediately made application to the Circuit Court, which was then in session, for a writ of *habeas corpus*, and was discharged, after being in custody about two hours.

The defendants, in justification of the arrest, offered to read, in evidence to the jury, the following ordinance of the city, which was passed December 23, 1873:

"AN ORDINANCE RELATING TO VAGRANTS.

"Section 1. *Be it ordained by the Common Council of the incorporated town of Fort Smith*, That it shall be deemed a misdemeanor for any able-bodied person to be found within the limits of the corporation having no visible or apparent means of subsistence, and neglecting to apply himself to some honest calling, or being found habitually loitering around street corners, or bawdy houses, or tippling houses. Any such person shall be deemed a vagrant, and on conviction thereof, before the mayor, shall be fined in any sum not less than five nor more than twenty-five dollars.

"Section 2. Any traveling keeper of any gaming table,

bank or other gambling device, and all persons who travel and go about from place to place, for the purpose of gaming, shall be treated as vagrants, and deemed guilty of a misdemeanor, and on conviction thereof, before the mayor, shall be fined in any sum not less than five nor more than twenty-five dollars."

The State objected to admitting this ordinance in evidence, on the ground that it was inconsistent with, and abrogated by, the Constitution of 1874, and the mayor had no jurisdiction over the charge of vagrancy. The court sustained the objection—refused to admit the ordinance in justification of the defendants, but admitted it in mitigation of damages.

Among the instructions given and refused by the court were the following, given for the State, against the objections of the defendants:

"5. Neither the mayor, in his official capacity as such, nor as *ex-officio* justice of the peace, has any jurisdiction of the crime of vagrancy; and a warrant issued by him for vagrancy, in either capacity, is without authority of law, and will afford him nor the officer executing it any protection, when charged with the offense of false imprisonment, committed by arresting the person named in such warrant; and one who procures such a warrant, by filing an affidavit before the mayor for that purpose, is equally culpable, in the eye of the law, with the judge who issued it and the officer who served it."

"6. If the jury find that the defendant, Colbert, made an affidavit before the defendant, Brizzolari, charging Thomas E. Lacey with vagrancy, and that defendant, Brizzolari, issued a warrant upon said affidavit for the arrest of Lacey, charging him with vagrancy, and placed the same in the hands of defendant, Kemp, and that Kemp arrested said Lacey under said warrant, and detained him thereunder for

any length of time, then they will find each of the defend-ants guilty."

The jury found Brizzolari guilty, and acquitted the other defendants ; and after motion for new trial overruled, he filed his bill of exceptions and brought error.

*W. M. Cravens, Thomas Marcum,* for appellant, and *J. Brizzolari, pro se* :

1. The Mayor's court has jurisdiction. *Const.* 1868, *sec.* 47, *Art.* 5 ; *sec.* 3232, *Gantt's Digest* ; *Ib.,* 3222 ; *St, Louis* v. *Bentz,* 11 *Mo.,* 61 ; *Kennedy* v. *Phelps,* 10 *La., Ann.* 227 ; *Cooley Const. Lim., p.* 198 ; *State* v. *Noyes,* 30 *N. H.* (10 *Frost*), 279 ; *Clark* v. *Rochester,* 28, *N. H.,* 605 ; 1 *Dillon on. Mun. Corp., sec.* 401 (*3rd Ed.*), *note* 3.

2. The ordinance was not abrogated by the Constitution of 1874, or the General Incorporation Law of 1875. *Act* 1875, *sec.* 33, *p.* 14 ; *sec.* 9, *p.* 7 *and sec.* 22, *p.* 11 ; *Const.* 1874, *sec.* 1, *Art.* 7 ; *Ib. Art.* 7, *sec.* 43.

3. The police power of municipalities over the *crime* of vagrancy was not taken away, and conferred upon the county courts by *Sec.* 28, *Art.* 7, *Const.,* 1874. This sec-tion only gives such courts superintending control over vagrants, etc., to regulate how they shall be dealt with when liable to become a burden on the county, etc., and gives them no *criminal jurisdiction. Secs.* 11, 40 *and* 43, *Art.* 7, *Ib.*

*C. B. Moore, Attorney-General,* for the appellee :

*Art.* 7, *Sec.* 28, *Const.* 1874, provides : "The County Courts shall have *exclusive original jurisdiction* in *all mat-ters* relating to * * * vagrants, etc., * * *." This took away all right from all other courts to deal with vagrants ; the ordinance was a *nullity* and not continued in force by *Sec.* 33, *Act. Mch.* 9, 1875, being "inconsistent with the Con-stitution."

OPINION.

VAGRAN-   HARRISON, J.  When the ordinance for the violation of
CY:
Jurisdic- which Lacey was arrested was passed, section 3232 of
tion of
municipal *Gantt's Digest*, was in force.  The said section was as fol-
courts.
lows :

    " Section 3232.  Municipal corporations shall have power
to make and publish from time to time, by-laws, or ordi-
nances, not inconsistent with the laws of the State, for car-
rying into effect or discharging the powers or duties con-
ferred by the provisions of this Act ; and it is hereby made
the duty of the municipal corporation to publish such by-laws
and ordinances, as shall be necessary to secure such corpor-
ations and their inhabitants against injuries by fire, thieves,
robbers, burglars and other persons violating the public
peace ; for the suppression of riots and gambling, and inde-
cent and disorderly conduct ; for the punishment of all lewd
and lascivious behavior in the streets and other places, and
they shall have power to make and publish such by-laws and
ordinances, not inconsistent with the laws of this State, as
to them shall seem necessary to provide for the safety, pre-
serve the health, promote the prosperity and improve the
morals, order, comfort and convenience of such corpora-
tions and the inhabitants thereof."

    Though vagrancy is not expressly mentioned it comes
within the purview of the Statute, for it is an evil as detri-
mental to the good order and well being of the community
as any other within the power and discipline of the corpora-
tion, and there can be no question that the ordinance was
authorized by the Statute.

    *Dill on Munic. Cor.*, section 334 ; *St. Louis v. Bentz.*
11 *Mo.*, 61 ; *Mayor and Aldermen* v. *Allaire*, 14 *Ala.*, 400.

    By section 33 of the Act of March 7th, 1875, for the incor-
poration, organization and government of municipal cor-

porations, "all laws, ordinances and orders which had been before passed or adopted" by the council were continued in force,

But it is contended that the ordinance was inconsistent with and abrogated by the present constitution, and so not in force when the Act of March 7th, 1875, was passed. <span style="float:right">Not abrogated by constitution of 1874</span>

Section 28 of Article VII of the Constitution says:

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, briages, ferries, paupers, bastards, *vagrants*, the apprenticeship of minors, the disbursement of money for county purposes, and in every *other* case that may be necessary to the internal improvement and local concerns of the respective counties."

It plainly appears by the language here used, considered in connection with the other provisions of the constitution distributing the judicial power of the State among the tribunals created by it, that the jurisdiction given the county court is confined to matters relating to the "internal improvement and local concerns of the county," and so far as respects vagrants, extends only to such matters of police regulation as are designed to prevent them from becoming burdensome to the county, or in their nature local or of special concern to the county.

And the object of the power conferred by the Statute upon the Mayor was not an investiture of jurisdiction over violations of public law, but to provide a mere police regulation for the enforcement of good order within the limits of the corporation.

The ordinance was therefore not abrogated by the adoption of the Constitution of 1874, but was a valid and subsisting one at the passage of the Act of March 7th, 1875, and was continued in force by it, and the enforcement of it

24—37

was within the appellant's jurisdiction as mayor of the city.

The fifth and sixth instructions given for the State were erroneous and should not have been given.

The judgment is reversed and the cause remanded.